The next case is number 09-1799, Bastien v. Secretary of Veterans Affairs, Mr. Rosensky. Thank you, Your Honor. May it please the Court. Independent of the legal errors that I am prepared to discuss here this morning, Mrs. Bastien submits that this case should be remanded based on this Court's recent decision in Rizzo at 580 F. 3rd 1288 because Mrs. Bastien requested and challenged the qualifications of the experts in this matter below, before the Board, which is exactly what the Court stated in Rizzo was the exception to the presumption that all the veterans, excuse me, all the VA experts are deemed qualified and competent. How did you challenge it? Did you say they're relying on Dr. So-and-so, but he's not qualified to give an expert opinion in this matter? How did you challenge it? I mean, Rizzo speaks about it being unchallenged, but obviously a challenge has to be something more than just saying, we don't think the witnesses are qualified. Yes, Your Honor. What did you say? Well, first of all, For example, did you say that Dr. Pasquale is not qualified because he's a hematologist and this case involves not hematology but ontology? Your Honor, first of all, there's two exceptions. One, Mrs. Bastien was not represented by counsel before the Board, as Mr. Rizzo was. And secondly, she challenged in writing both of her submittals, there are two submittals here, in 1999, a shorter submittal, which Dr. Pasquale apparently considered, and a 2001 submittal, which was substantially dissimilar to the 1999 submittal but had additional information based on the record and came up with a higher number. Both of those also contained  They are submissions where Mrs. Bastien identified in the record exposures to radiation that her husband received. She had summed them, she added them up and came up with I don't think that was Judge Friedman's question. Forgive me, but we were talking about whether she raised the qualifications, right? Yes, Your Honor. And in the letters at A28, in the appendix to my brief at A28, there is a reference, specifically cited in our brief, where she requested and is discussing her request to the Board in a letter and phone calls to the regional office, challenging the qualifications and the competency of the experts. And she listed a lot of reasons. I'm sorry, I don't quite understand. This is my problem. When you say challenging the qualifications of the expert, that could mean anything. That could just be a statement that I don't think the expert is qualified or it could be a statement, this expert is not qualified because... Yes, Your Honor. Would I like to find out, was it the former or the latter? It was the latter. She listed a number of reasons, some of which were legal interpretations granted, but she specifically asked for the qualifications and the background of Dr. Pasquale, specifically, but the secretary's experts. She asked for his qualifications, but that's not the same thing, it seems to me, as saying whatever his qualifications are, he's not qualified. I agree. Does she say he's not qualified? There's some emotional language there, but yes, she challenges his qualifications because of the result that he came up with. Can you point us to what we're talking about on the record? Because the first thing you said was A28, and I'm looking at A28, and I don't see anything that you might be referring to. So I guess... It says, I am responding to a Houston VA letter received. I am requested in writing a copy... What page is this? This is A28. All right. Appendix 28. A28? Appendix 28 to the appellant's brief. I'm not seeing any mention of either doctor. I'm requesting a copy of the radiation dose report in the name of the expert who made the report and the expert's qualifications, degrees, and certification. The Houston office, instead of responding to my request, called my U.S. representative's office. Ron Paul. Scott Green, aide to Representative Paul, phoned me about the letter, then phoned the Houston VA office, and then phoned me that they would not respond to my request. So you're saying the fact that she asked for the degrees and certifications is a challenge to their credentials? That's explicitly what Rizzo discusses, and exactly what Judge Rader found troubling in Mr. Rizzo's case, is that he did not challenge this before the board, but raised it after the board decision before the court. Well, the question is, what does challenge mean? I believe whatever it means other than this, an explicit request, the degrees and certifications. What she seems to be saying, she's addressing this, I read this, the amount of radiation that he received, whereas as I read the board's opinion, it primarily says the defect in her case was not how much radiation he received, but the lack of any showing that low doses of radiation are likely to have caused this cancer. Your Honor, that gets to the heart of the legal substance here. The veterans court and the board and the secretary before this court is asking and answering the wrong question. Mrs. Bastian identified information in the record. That is what the secretary's people, the experts, are supposed to do themselves. They have thrown out the message because they have deemed the messenger unqualified. We challenge that a claimant needs to be qualified to point to issues in the record and say, here's how I read this, but the facts are in the record. Whether she came up with a number or not, she said he received these 50 or 100 exposures. The board accepted that process in its 2000 decision, which apparently the secretary is relying upon here, which is not before this court. In the 2006 decision, which is before this court, the board said, you're not qualified, we're not going to consider that information. It's information in the record. They should have done, or at least explained why they didn't do it, the exact same process that they did in 2000. Mr. Expert, we have this information identified to us. Please explain to us what this means. There's never been a challenge. It's undisputed. Mrs. Bastian's two submittals, two, not one, there's error that there is any error in her identification of the actual exposures to her husband. There may be reasons why her summation, the total number of radiation amounts that he received is different. That's what the expert's supposed to do. Look at those. How much do you get for an extra one? She had two submissions that dealt with that issue. Yes, Your Honor. One in 1999 and the other in 2001. Yes, Your Honor. Is there a reason why these came sequentially? Because she was responding to the 2000... Okay, I get it. But the 1999 is off the table, right? Because, indeed, whether he was required to or not, Dr. Pasquale did respond and deal with, and I think except for, to some extent, her submission. Exactly. So we're only talking about the 2001. That is the information, supplemental information, because the 2000 board decision was remanded. There is also two interstitial board decisions before you get to 2006. That is supplemental information as in any other case before the court. What we're saying is everyone seems to have missed below that the secretary had an independent 5107, 38 U.S.C. 5107 duty to look at that information, not look at the messenger and say, the messenger is not qualified to identify things in the record. They should have asked... Is the question here whether he looked at the information? I mean, there's no dispute he looked at the information. The question is whether or not he was going to give a controlling weight. No, Your Honor, because in 2000 the board looked at it and said, you're identifying radiation information. We don't know what the significance of that information is and gave it to Dr. Pasquale. They did not do that in 2006. Right. They just said the messenger is not qualified to identify this to us. It's not medical information. How else is a claimant, any claimant, supposed to identify information to the board other than submit, here's a list of information, and in this case he said, I've added it up, and according to my research this is what it means. I agree. Ms. Bastian agrees. Her medical conclusions, if there are any mixed in there, that this caused my husband's cancer is outside her expertise. Let me come to this that's reprinted in the appendix. This is the 2006 opinion. You've reprinted your appendix. Yes, Your Honor. And at the bottom of page 77 and the top of 78, that seems to me to be the board's rationale in this case. It says that the December 1988 opinion of the physician-designee of the undersecretary that it was unlikely that the veteran's condition could be attributed to exposure and the September 1999 opinion that the veteran's radiation exposure was extremely unlikely to have caused it has great affirmative values on the two opinions and the three opinions that they list on the next page. And isn't that the kind of a judgment that it's, as the court said, for the board to make and not for the court? Yes, Your Honor, except that that 1998 opinion was based on another legal error, which was it was based on the recorded dose of 10 millirem, an extremely small dose, not the probable dose. Dr. Mather in 1998, as the secretary seems to rely on, stated her office could not perform a dose assessment. That's a quote out of her four paragraphs. The bottom paragraph to that then says, based on this dose we've given you, I conclude that you couldn't have any service connection here. She also admitted there was no scoping dose. So what she said was, I don't know how much dose Mr. Bastian got, I don't know how much dose you need to get the cancer Mr. Bastian has, but I conclude that whatever he got wasn't enough. That's the error in Dr. Mather, and the court explicitly relied upon that. It sounds to me, in what you just told me, that your argument basically is that the board gave her opinion more weight than it was entitled to. My argument is, as a matter of law, her opinion, to the degree it even is relevant to the 2006 decision, because it was overcome by both of her submittals. Dr. Mather's opinion was made in 1998, there was a 1999 submittal by Mrs. Bastian, a 2000 opinion by an expert who adopted the amount suggested by Mrs. Bastian in 2000, and then a 2001 opinion, which no one has ever dealt with, the board said, we're not going to deal with it. Further, it is a legal issue of whether you can take a reported dose. This is all the stuff we found in the record. One page, which is known to be incorrect. The only thing we're sure of in this case, Mr. Bastian did not get 10 millirent, because that one document was in the middle of his admitted period of time at the reactor, and obviously does not consider any of his other exposures. Again, no one has pointed a single error in the record citations, or even the textual citations to a general text in Mrs. Bastian's submittal. It's the duty of the secretary through the board, or through the experts, to interpret that for the board, not to dismiss it because Mrs. Bastian isn't an expert. If she would have said, and to the degree she did say, it was appropriate for the board and the court to say, we can't have you make the nexus decision. But to say that she cannot, one, challenge and ask specifically for a resume when she has basis, because she didn't believe Dr. Mazur or Dr. Pesquale did the right thing, which indeed they didn't afterwards, then it's an irrebuttable presumption, which is not what Rizzo says. And secondly, it is unclear how a claimant can identify medical material in the record. Because you can just say you're not a doctor, you can't point to the record. That is the argument here. Also, without any reasons and basis, either at the court or the board, they treated substantially similar submittals completely differently. They accepted and provided to an expert the first 1999 submittal and said, we're not going to even look at, we're not going to submit to an expert for sure, and we're not going to give any weight to her second submittal because she is not an expert. If that is pushed forward, it is unclear how you can raise these issues when the secretary doesn't do his or her job in identifying the material in the record, which is their fundamental duty at the agency level. Okay. Let's hear from the secretary. Good morning, Your Honors. May it please the Court. Virtually all of the arguments raised on in this appeal, and in particular this morning during oral argument, require an underlying challenge to a factual determination made by the CAVC, which of course would be beyond this Court's jurisdiction. You said virtually all. You concede that we would have jurisdiction to consider a claim that the board applied the wrong evidentiary standards, evaluating expert testimony, don't you? If that was in fact the issue. But that's not really the issue before this Court. Ms. Bastian says that the CAVC erred because the board never considered her submission with the dosage estimates. I understand his argument on the witnesses is basically that as long as there is some challenge to the witnesses' qualifications, there's a burden on the secretary to produce evidence showing the witness is qualified. Yes, and I do think that is the argument that he's making. And I heard you ask him whether, as a matter of fact, she did make such a challenge below. And the CAVC, well, first of all, the only way that that was answered was to say that she asked for the doctor's credentials. So my first answer would be that that would be insufficient. If we look at this Court's decision in Rizzo, the Court basically adopted the CAVC's decision in Cox in the context of deciding Rizzo. And they quoted, the Court quoted pretty extensively to the decision in Cox. And in Cox, the CAVC said, Mr. Cox has provided no evidence, nor can the Court discern any in the record that would cast doubt on the doctor's qualifications. So it can't be simply I asked for credentials. The burden, according to the CAVC in Cox and adopted by the Court in Rizzo, is that the burden shifts. There's a presumption that the medical qualifications are there. The burden shifts to the claimant to come forward with evidence challenging those qualifications. Well, how can she begin to put together the evidence that would be necessary to challenge it if the government won't even give her the qualifications? Well, and that's exactly it, Your Honor. She did ask for those qualifications, and she was given those qualifications. That was responded to. Not immediately, and that's why she was complaining that she never heard, but she did ultimately, in fact, I think it was actually the subject of one of the remands that it became clear that procedurally she had never gotten a copy of Dr. Pasquale's report. That's what she was asking for. Well, she asked for the qualifications and credentials. Right. So she got his report, she got his credentials, she knew he was a hematologist. And after that, she didn't come up with anything. She didn't come up with anything, and that was a factual finding by the CAVC, because if you look at the CAVC's decision, at A7 of the appendix attached to the blue brief, the CAVC finds Ms. Bastian has provided no basis for questioning the qualifications of the doctors. But aren't we getting to, in thinking about the burdens, this really is the underlying problem, isn't it? Here we have an extraordinarily rare disease, and the only thing that this veteran did, which was different from someone else, was that he had some exposure to ionizing radiation. So we've been arguing so far today, and through the briefs, as to how much exposure did he have. But meanwhile, there's nothing in the record to relate ionizing radiation and this kind of cancer. And I'm reminded of the great debate about Agent Orange. There was nothing in the record, and so for the early cases, there was no established medical connection, because these were all new kinds of exposure. Therefore, the veteran lost until Congress enacted a law and provided a presumption. Now, so here we have another case. It's clear that this veteran had some exposure to ionizing radiation. And I think it's pretty much common knowledge these days that some people get cancer from more, some people get cancer from less, of different kinds of influences. As long as the burden is on the veteran, it looks as if it can't be met in such a circumstance. And I just wonder if that really is the underlying policy of the VA in such cases. I think probably it isn't. Whether there's anything that this court can do, I guess, is another question. But there does seem to be something really basically unfair to say, because nobody has experience with this. Nobody really was measuring his exposure. He wore a badge now and then, but nonetheless, he got this extraordinarily rare disease and died of it. And there's kind of a general knowledge that maybe ionizing radiation isn't good for you. What does one do in a case like that? Well, I guess there are a few answers to that question. First of all, this actually is a case where there was quite a bit of evidence of how much radiation he got. After many, many searches of the records. She says you didn't count this, you didn't count that. He only counted a few days when he was wearing a badge. But that's not what the CAVC found. The CAVC found, as a matter of fact, that both of the doctors whose opinion were given more probative weight reviewed the entire record. And the entire record, and there's a recitation of what's included in the record in both the board and the CAVC's opinion, the entire record included quite a bit of data. Not just one record of his dosage, not just one record from a badge, but quite a number of documents eventually came forward showing his dosage exposure during different periods of time that he was in the service. Did it include her 2001 submission that we were talking about earlier? Her 2001 submission and even her 1999 submission, both of those were not to identify other instances of his exposure. They were her attempts to mathematically calculate the dosage that he was exposed to based on the instances of records. So she said I'm using math and research methodologies to calculate what I think is the appropriate dosage. It's not that she was coming forward and saying you didn't take into account when he was at the Texas A&M reactor and therefore you're off. It's that I just think that that exposure at the Texas A&M reactor was not accurate because these dosimeters are not that accurate. And so I prepared my own calculation of the dosage. Even in a situation, let's just say that the 10 millirems was accurate. At some point, isn't there a burden on the secretary to say what is more likely to have caused the illness? That's exactly what the burden is, the statute. And I couldn't find that anywhere suggesting that something else causes disease or that anybody really knows what causes this kind of cancer. Well, maybe I asked a little bit and that's exactly what I meant to say. The issue is whether or not the in-service incident caused the disease. I don't think there's a burden on the secretary to show what else might have caused the disease. Well, I don't know. Depending on who has the ultimate burden of proof, perhaps there needs to be a burden in the larger picture to at least suggest something else that might have caused this particular kind of cancer. And that wasn't done. And that might require some change in the statutes and regulations. But as they stand now, right now there is still a burden to demonstrate medical causation between the acknowledged exposure to radiation in service and the disease from which the veteran died. And that's what wasn't there because the two medical experts that specifically addressed that question said, in looking at all of the literature and all of the studies on this point, there is not evidence that exposure to radiation causes this particular kind of cancer. Yes, as long as the burden is on the veteran or the survivor, when there's a very rare disease to establish causation, it's not easy. And there was no evidence of the relationship. I agree with you. So therefore you haven't made your case. It's very difficult when this was unusual exposure to ionizing radiation in service and an extraordinarily unusual form of cancer, I get it. I think the cancer is an unusual form of cancer, but the record doesn't suggest that Mr. Bastian's exposure to radiation was unusual. In fact, to the contrary, it suggests that his exposure was extremely low. All people, even people that are not in the service, are exposed to a certain amount of radiation. We all go to the dentist, we have x-rays taken, we may have other medical procedures, but not everyone develops a cancer that can be directly related to that exposure. Precisely. That's what I was concerned about. Whoever has the burden of proof loses, is what it looks like. Well, it seems that in this particular kind of cancer, the state of the knowledge right now, and there have been studies, and Dr. Pasquale cited numerous studies looking into this exact question, and the studies show that individuals who were exposed to the kind of radiation dosage that Mr. Bastian was exposed to had no increased risk for this particular unusual form of cancer. That's exactly what he said. There are two different related questions here. The first is, how much radiation was he exposed to? And that's very difficult to determine, apparently. And two, let's assume that he was exposed to radiation, is it more probable than not that that exposure caused his cancer? And as I read the Board's opinion, it primarily rested on the second ground and said that the expert medical testimony made it less likely than the other testimony that his exposure caused the cancer.  The Veterans Court came along and said, and that's a judgment that we think is committed to the Board and not to the Reviewing Court, and therefore there's nothing in effect we can do about this decision. Yes, I think that is exactly right, Your Honor. I think that's exactly what happened here. Nobody knows what caused this kind of cancer, and it's very rare. So, then what? So, somebody who gets it and who has a fear, because this was apparently an unusual event in this veteran's life, has to lose, because there is not enough scientific evidence. But I think that that's true, except for cigarette smoking. I think causes of cancer are still extremely elusive. That is true. However, Congress has seen fit in some instances to make the burden a little bit lighter. For example, when veterans have been in high-risk situations, such as I think it's Nagasaki and Hiroshima, and then they develop certain cancers, Congress in that instance saw fit to make the presumption of a causation a little bit lighter. After a lot of claims have been lost on the same theory, you can't prove it. Again, at this point, the state of the law that's applicable to this case does require causation and evidence of causation, and the Board found that the weight of the evidence was against that, and that was, in fact, the basis on which the CAVC affirmed that decision. The weight was against it because there was no evidence of causation. I suppose there was no evidence that you can't get this kind of cancer from ionizing radiation either. But that is not sufficient to win the case for the claim under the state of the current state of law. Yeah, I think that that's accurate. Can I turn you, before your time runs out, back to Rizzo? Yes. It seems to me that the question presented in this case was not necessarily entirely resolved by Rizzo. Would you agree with that? I mean, in Rizzo, there was no challenge whatsoever, and that's what the Court relied on. Here, isn't the issue sort of like, what do we mean by challenge? What is sufficient to mount an appropriate challenge? Well, I would say that Rizzo left that door open, except that, as I said, the Rizzo courts expressly says, this court adopts the reasoning of the Veterans Court in Cox. And right before that, so that's kind of the conclusory statement, but right before that, there's an extensive citation and discussion of the Cox decision by the Veterans Court. And the Veterans Court in Cox says, this is an instance where the burden actually, where we start with a presumption of the qualifications, and the burden actually shifts to the attacker to come forward with something, some evidence or something challenging. And so by adopting that decision, I would say that this Court also was saying, we need, okay, it wasn't that issue in Rizzo, but we're all saying that what we would need is some evidence, something to come forward. And the CABC in this case said that Ms. Bastian failed to present anything. You read the first sentence of that paragraph, the court adopts the reasoning of the Veterans Court in Cox, but then it continues and explains what it is doing. It says, absent some challenge to the expertise of a VA expert, this court perceives no requirement to present affirmative evidence of the physician's qualifications. Oh, yes, Your Honor. I'm not ignoring that at all. What I'm saying is that in trying to understand what the words some challenge mean, I'm referring the Court to the Cox decision because, after all, this Court has just adopted the Court's reasoning in Cox, and Cox does speak, I believe, Cox does speak to what some challenge means by saying the presumption of a regularity doctrine thus allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show to the contrary. Mr. Cox has provided no evidence, nor can the Court discern any in the record, that would cast doubt on Dr. Bardo's competence and qualifications. So applying that reasoning to this case, the CABC found in this case on page 7 of the Joint Appendix that Ms. Bastian provided no basis for questioning the qualifications of the doctor. Yes, she asked to see the report. Yes, she asked for his qualifications, but having received them, she didn't come forward and present to the Board, the Court found, she didn't come forward and present to the Board evidence that would contest his qualifications. I tell you what you're saying is when Rizzo said, absent some challenge to the expertise of the witnesses, it's not enough to just say we challenge the expertise of the witness. They've got to come up with something to say why they don't think this witness is credible. That is what I'm saying, and I'm saying that that's a permissible reading of this Court's decision in Rizzo because of its extensive citation to Cox. No, that wasn't an issue in Rizzo. I admit that because he didn't make any challenge. But because the Court went to the extent of adopting the decision in Cox, and Cox did have a finding that there was no actual challenge, I'm saying yes, there has to be something more than I challenge or I question this doctor's expertise. There has to be the burden of shifting, so there has to be some evidence coming forward to actually challenge it. And here, the CABC said, as a matter of fact, we find that Ms. Bastian has not presented that basis, has not done that, and that's a factual determination that this Court did not revisit. They may have presented some challenge, but it wasn't sufficient. Well, the CABC didn't even go that far. I mean, they said no basis, but I guess that could be interpreted as some challenge but insufficient. But again, that would be a factual determination. Any more questions? I think I have actually exceeded my time, so thank you, Your Honor. Thank you, Ms. Stern. Mr. Roginsky. Your Honor, I think, again, we're overlooking a couple of points I haven't been clear. Judge Freeman, to your point, the evidence that there was a basis for the challenge are the expert reports. The Secretary's expert said, we can't do any dose assessment. We don't know what he got. Then they adopted 10 millirem in one expert report. The next expert report adopted 2.7 rem, 2,700 millirem. You get three different answers from two different people. I think that is a legal basis to say, all right, who's doing this and what is their background? Who do we believe or who can I challenge? As a legal matter, the use of 10 millirem based on a single document is an error here that was adopted by the board and was an error of the court to approve. The issue in Cox is correct. You have to have some basis. Three different opinions, two different people. That is a basis to challenge and figure out who the board should want to know, who do I believe. It's not unusual in a medical case. You have different doctors who come up with different opinions on a medical matter. That's common, happens every day in court. But this is a legally required fact. The probable dose was off between these two individuals by a factor of 2,700. That is an issue here. Subsequently, and let's not forget, no one has ever looked at the 2001 submittal, which came up with numbers on the range of 150 rem, 150,000 millirem. That, for all the stuff we've heard and reading the brief, they have squashed together the 2,000 and said Dr. Pasquale looked at submittals. Dr. Pasquale looked at one submittal from Mrs. Bastian and accepted it. No one with medical expertise, the board doesn't have medical expertise, has ever considered whether 150 rem is significant. However, if you read Dr. Pasquale's expert opinion, greater than 99 rem, we've got a different case is what he says. It's in there at the first page of his opinion. That is why this is critical that some expert in the VA look at the second submittal. That is a legal requirement under 311C and E. They have to have the fact. The legal error here on 311 is, again, that no one established the probable dose. As a matter of fact, today we do not know what the probable dose is. We've got 10 millirem one expert, 2,700 millirem, 150,000 millirem is floating around. That is the issue here. We can't prove the cancer happened. What Mrs. Bastian is asking is not that the court decide what happened, but that the process as a legal matter be stringent enough to allow the best estimate of what happened. If Dr. Pasquale is asked to look at the 2001 submittal and says, there is no evidence that he got dental or chest x-rays. By the way, 2001 submittal has very little to do with the Texas A&M. You can look at page A51. Chest, dental, sinus, sinus, sinus, dental, chest, sinus, chest, dental. It's all the other stuff that no one looked at. There is no evidence. We know Dr. Maynard didn't look at it. She said what she looked at, 10 millirem. Hilpert says she has to specify which of the factors she looked at. She said two, and the court said we rely on those two. The dose, which she said she couldn't figure out, and she said was 10 millirem. Then Dr. Pasquale said it was something else, and the sensitivity of WM, I won't try to pronounce it, which Dr. Maynard said we don't know. As a matter of law, that is insufficient to support a deny, and we would ask that this court remand it to the Veterans Court to go back now with this information and legal guidance on what needs to be done with the information that was not considered by the experts. Whether the board kind of handled the qualifications of Mrs. Bastian to raise it is all moot. They needed to call in the expert for the third time because the information was the same, although updated as any other Veteran can do when the remands go back. This case has been remanded from the board five times. It is not surprising, and won't be surprising if it comes back for a sixth time. They haven't been able to get it right, and these are now the reasons because we've been able to sit down and look at all the law and see where the legal errors are, not weighing factual issues, but not addressing factual issues as required by law. Thank you, Mr. Osinski. Thank you, Mr. Osinski. The case is taken into consideration. That concludes the argued cases for this morning. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock.